———o———

No. 6985.

## NORMAN MAYER & CO. v. G. A. BODENHEIM.

### Syllabus.

Where a cotton broker carries various accounts in the name of another member of the Cotton Exchange for account of his several customers, he cannot consolidate all such accounts and compensate one credit account in one name against another debit account in another name.

Any such custom, if shown to exist, would be contrary to law and could not be recognized by courts.

Appeal from the Civil District Court, Parish of Orleans, Division "A"; Honorable T. C. W. Ellis, Judge. Affirmed.

Hall, Monroe & Lemann, for plaintiff and appellee.

A. W. Cooper, for garnishee appellants.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Plaintiffs sued the defendant, a resident of Longview, Texas, for $5,593.35. They issued an attachment and garnished Wilkins & Fenner of the City of New Orleans.

The garnishees answered:

1. Yes, on May 15th, 1916, L. K. Newman & Co.   *   *   *   turned over to our firm certain contracts for the future delivery of cotton which they had entered into for the account of A. J. Carriere   *   *   *.   This account has not been closed and shows a balance due Wilkins & Fenner by said A. J. Carriere of $230.12.

2. Yes.   On May 16th, 1916, at the direction of A. J. Carriere, Messrs. L. K. Newman & Co., who were liquidating, transferred to us certain contracts for account of "A. J. Carriere a/c G. A. Bodenheim." We attach hereto a statement of the account of "A. J. Carriere a/c G. A. Bodenheim" showing a balance due to the credit of said account of $606.67 * * *.   In regard to the character of said account we make the following statement:   All contracts for future delivery of cotton entered into by us for account of customers specifically state that they are made under the by-laws, rules and regulations of the New Orleans Cotton Exchange, and under Section 5 of the United State Cotton Future Act.   Under rule 25 of the rulings on commission law "It is necessary for a member of the Exchange soliciting business for another member or firm represent-

ed by membership in order to obtain rebate on all non-member business, that orders be carried in his name and on his responsibility." A. J. Carriere was and is a member of the New Orleans Cotton Exchange and G. A. Bodenheim was not and is not; this account was carried "A. J. Carriere a/c G. A. Bodenheim" for the convenience of Carriere and was so carried at his request. Our agreement with A. J. Carriere, whereby we carried the account of "A. J. Carriere a/c G. A. Bodenheim" was made in contemplation of the provisions of ruling 25, above quoted, we, consequently, carried this account on the sole responsibility of A. J. Carriere as the person in whose name said account was carried. There was no privity of contract whatever between Wilkins & Fenner and G. A. Bodenheim, and in this transaction and in all similar transactions we would have made no payment or executed no orders except upon the authority and direction of A. J. Carriere, nor would we have had the right to do so under the rules of the New Orleans Cotton Exchange. Whenever various accounts are carried by us for a customer, member of the Cotton Exchange, as for instance in this instance of "A. J. Carriere account" and "A. J. Carriere a/c G. A. Bodenheim" we invariably reserve and exercise, and in this instance reserved the right to consolidate all such accounts, this being the invariable custom of the trade of the New Orleans Cotton Exchange, and, consequently, we now claim the right of offsetting the amount due us on the A. J. Carriere account, namely $230.12, against the amount due by us on the account of "A. J. Carriere a/c G. A. Bodenheim" namely $606.67, and for the difference between the sum of $606.67 due by us on the account of "A. J. Carriere a/c Bodenheim" and the sum of $230.12 due to us by the account of "A. J. Carriere Account", or say, the sum of $376.55, A. J. Carriere has made written demand upon us claiming ownership of

said difference, and therefore, we except to all further proceedings herein unless and until A. J. Carriere be made a party hereto.

Annexed to these answers is the letter of L. K. Newman & Co., to Wilkins & Fenner, dated May 16th, 1916, as follows:

> "Gentlemen:
>
> "We are turning over to you for account of A. J. Carriere a/c G. A. Bodenheim, Longview, Texas.
>> Bought 500 July at 12.85.
>> Bought 1000 July at 13.03
>
> also our check for $3853.60 (Thirty-eight Hundred and Fifty-three Dollars and Sixty Cents) for the same account."

The account of Wilkins & Fenner concerning this transaction reads as follows:

> "Mr. A. J. Carriere a/c G. A. Bodenheim.
> "In account with Wilkins and Fenner.

| 1916 | | Cr. | |
|---|---|---|---|
| May 16, | By cash | | $3853.60 |
| May 17, | By cash | | 1500.00 |
| June 2, | By 1000 October | | 493.67 |
| 1916 | | Dr. | |
| May 25 | To 2500 July | $2146.00 | |
| June 20 | To 900 October | 1590.76 | |
| June 22 | To 600 October | 1503.84 | |
| | Bal. due you | 606.67 | |
| | | $5847.27 | $5847.27 |

Thereupon plaintiffs filed a rule calling upon Wilkins & Fenner to show cause why judgment should not be entered herein, decreeing the plaintiffs entitled to the aforesaid sum of $606.67 free from the claims of Wilkins & Fenner thereon.

There was judgment in favor of plaintiffs and Wilkins & Fenner have appealed.

We think the judgment is correct. The contention of the garnishees that under the rules of the Cotton Exchange the responsibility of A. J. Carrière to them is personal whether trading in the name of "A. J. Carriere", or in that name "for account of G. A. Bodenheim", is not the question at issue. It is immaterial whether Carriere alone or Carriere and Bodenheim both are liable to Wilkins & Fenner. The determination of that question is not necessary and would not assist in the solution of the controversy here.

The sole question here is whether the balance of $606.67 in the hands of Wilkins &. Fenner is the property of Carriere or of Bodenheim. If it is the property of Carriere then of course, plaintiffs are not entitled to it. But if it is the property of Bodenheim it must be paid to plaintiffs unless Wilkins & Fenner have the right to appropriate it to pay themselves for a balance due to them by Carriere individually. There was no testimony taken in the case, which was tried on the answers of the garnishees and the documents annexed to their answers. The letter of L. K. Newman & Co., filed by the garnishees, shows that the money to the credit of the account was the property of Bodenheim. As an evidence of that fact L. K. Newman & Co., when they transferred the account of G. A. Bodenheim to Wilkins & Fenner, also turned over to them their check for $3853.60, which represented the credit to that account. That balance was evidently the property of Bodenheim, as Wilkins & Fenner were informed by the letter of L. K. Newman, which reads as follows:

"We are turning over to you for account of A. J. Carriere a/c of G. A. Bodenheim, Longview, Tex-

as, * * * Also our check for $3853.60 for the same account."

In other words Newman transferred to Wilkins & Fenner, for account of A. J. Carriere, the account of G. A. Bodenheim together with a balance of $3853.60 belonging to Bodenheim. It certainly was not a donation by Newman to Wilkins & Fenner or to Carriere. The only allusion to the name of A. J. Carriere in the account of Bodenheim was to conform with rule 25 which required that "orders be carried in his . (the member's) name and on his responsibility", as Carriere was a member of the Exchange and Bodenheim was not. But that balance never ceased to belong to Bodenheim because it was placed to the credit of the Carriere-Bodenheim account under the circumstances. The very title of the account indicated that the debits and credits were for the account of Bodenheim. The account was enriched by the further payment of $1500 and $493.67 presumably by Bodenheim.

It follows as a conclusion of law that Wilkins & Fenner cannot compensate their debt to Bodenheim by a claim they may have against Carriere, unless Bodenheim has given his consent thereto expressly or impliedly. There is no pretense of any express consent. The implied consent arises from this statement of the answers to interrogatories:

"Whatever various accounts are carried by us for a customer, member of the Cotton Exchange, as for instance in this instance of 'A. J. Carriere Account' and 'A. J. Carriere a/c G. A. Bodenheim' we invariably reserve and exercise, and in this instance reserved the right to consolidate all such accounts, this being the invariable custom of the trade of the New Orleans Cotton Exchange, and consequently we now claim the right of offsetting the

288

amount due us on the A. J. Carriere account, namely $230.12 against the amount due by us on the account of 'A. J. Carriere a/c G. A. Bodenheim', namely, $606.67."

In other words the contention of the garnishee is that there is an "invariable custom of the trade of the New Orleans Cotton Exchange" that authorizes him to take A's money deposited with him to pay a balance due him by B.

There is no proof of this custom, nor that it was known to Bodenheim. But if there were, we could not presume that he submitted to it, and, in the absence of such proof, we could not apply it. A custom contrary to law cannot be recognized. 6 A., 760.

It is therefore ordered that the judgment herein be affirmed.

Opinion and decree, April 30th, 1917.

Rehearing refused, May 28th, 1917.